IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Floyd Granger, | Civil Action No. 6:11-1162-RBH-KFM |
| Plaintiff, | |
| vs. | **REPORT OF MAGISTRATE JUDGE** |
| Director Scotty Bodiford, et al., | |
| Defendants. | |

This matter is before the court on the defendants' motion for summary judgment (doc. 35) and the plaintiff's motion for summary judgment (doc. 69). The plaintiff, a state prisoner proceeding *pro se*, alleges that, while he was an inmate at the Greenville County Detention Center, the defendants were deliberately indifferent to his serious medical needs when he broke his finger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

The defendants filed a motion for summary judgment on September 9, 2011. Also on September 9, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response on October 12, 2011. On January 5, 2012, this court granted a motion to compel by the plaintiff and ordered the defendants to provide the plaintiff with a copy of his medical file. On February 9, 2012, the defendants filed an amended affidavit from defendant Bodiford in support of their motion for summary judgment. On February 15, 2012, the

plaintiff filed a motion for summary judgment, and on March 5, 2012, the defendants filed their response in opposition to that motion.

## **FACTS PRESENTED**

The plaintiff became an inmate in the Greenville County Detention Center ("GCDC") on October 21, 2009. While at GCDC, the plaintiff complained to mental health personnel that he felt the urge to hurt himself. A member of the GCDC mental health team responded by placing the plaintiff in a padded isolation cell to lessen the chance that he would follow through with his threat while the mental health team attempted to diagnose the plaintiff's problem and develop a course of treatment. However, on November 5, 2009, the same day that he began his stay in the isolation cell, the plaintiff punched his hand against a window, injuring his pinky finger on his right hand (comp. at 4-5).

An x-ray of the plaintiff's finger was made on November 5, 2009. The x-ray showed that the plaintiff had fractured his finger, but the bones were in a good position (def. m.s.j., doc. 35-3, Tracy Krein aff., ex. A at p. 2). The physician's orders state that the finger was to be "buddy taped" to the ring finger, and a follow-up x-ray was scheduled for November 19, 2009 (*id.* at p. 3).

On November 14, 2009, the plaintiff completed a GCDC inmate medical request form, requesting additional medical treatment because of pain in his finger. (*id.* at p. 4). GCDC medical staff responded by ordering a six-day prescription of Motrin (ibuprofen), 800 mg, which the plaintiff began receiving on November 18, 2009, and continued to receive through November 23, 2009 (*id.* at pp. 6-7). In the interim, on November 19, 2009, GCDC medical personnel took a follow-up x-ray, which showed that the fracture was healing properly (*id.* at p. 8).

The plaintiff filed a second medical request form on November 26, 2009, complaining that "nothing has been done about [the broken finger]" (*id.* at p. 9). A medical

2

staff employee responded to the request by listing some of the steps taken by medical staff to help the plaintiff, including giving the plaintiff ibuprofen and buddy taping the finger (*id.*).

Over the next three months, five more x-rays were performed (December 3 and 22, 2009; January 5 and 19, 2010; and February 16, 2010), each of which showed that the plaintiff's broken finger was healing properly (*id.* at pp. 11-15). In addition, physician's orders dated December 28, 2009, state that the plaintiff's finger was to be buddy taped for two weeks (*id.* at p. 16). On January 5, 2010, the plaintiff submitted a new medical request form complaining about an abscessed tooth, his arm, and his finger and asking for stronger medication than the ibuprofen that had been prescribed in the past (*id.* at p. 17). GCDC personnel responded by restarting a course of ibuprofen, 800 mg, for a week (*id.*).

On January 9, 2010, the plaintiff submitted an inmate request form addressed to the GCDC's Jail Administrator, Scotty Bodiford. He complained that he "broke [his] hand while under the Det. Center care and have yet 2 receive medical attention for it other than having it x-rayed 5 times." He claimed the doctor told him that he had nerve damage, there was nothing they could do for him, and he would have to wait until he got out to have his hand re-broke to relieve the nerve damage (*id.* at pp. 18-19).

Defendant Bodiford stated in his amended affidavit that he is not licensed to practice medicine and that Greenville County employs licensed and qualified medical personnel to provide those services to GCDC inmates. Defendant Bodiford further attested that while he did not specifically recall reviewing the plaintiff's grievance, it is his practice that when he gets such a grievance, he reviews the inmate's medical records or speaks to medical personnel to determine when and how often the inmate has been seen by the medical staff. Defendant Bodiford stated that based on his review of the medical records and his discussions with the medical staff following the filing of the plaintiff's lawsuit, medical services personnel x-rayed the plaintiff's finger on seven occasions, had an outside

3

radiologist evaluate those x-rays, and each report indicated that the plaintiff's finger was healing properly (def. m.s.j., doc. 68-1, Bodiford aff.).

In opposition to the defendants' motion for summary judgment and in support of his own motion, the plaintiff submitted several affidavits. His mother stated in her affidavit that when she visited the plaintiff on November 28 or 29, 2009, there was not tape or a cast on his hand, and the plaintiff stated he was in constant pain and had "little feeling if any in his fingers or hand." The plaintiff's mother stated that she called the plaintiff's father and asked him to call Greenville Councilwoman Lottie Gibson to see if there was anything she could do for the plaintiff (pl. m.s.j., doc. 69-3, Preciliana Granger aff.). According to the defendant's father, Ms. Gibson "had the Jail director call [him] at home and [the jail director] assured [him] that he would look into [his] son's problem . . . " (*id.*, Floyd Granger, Jr. aff.).

The plaintiff's wife stated in her affidavit that she visited the plaintiff in December 2009, and there were no splints or tape on his fingers (*id.*, Lisa Granger aff.). Another inmate, Jaron Dowens, also testified that at no time did he see the plaintiff's "hand bandaged, braced, or in a cast" (*id.*, Jaron Dowens aff.). In his affidavit, the plaintiff testified that the medical staff was supposed to buddy tape his finger, but all they did was x-ray his hand and prescribe Motrin. The plaintiff stated he has neuropathy because of the injury and takes Neurotin daily for that condition. He further claimed that he is still in constant pain and is restricted from repetitive use of his hand (*id.*, pl. aff.).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of

4

the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

The plaintiff alleges a claim for deliberate indifference to his serious medical needs and various state law claims[1] against defendants Greenville County, the "Greenville County Law Enforcement Center and Health Services," and Director Bodiford. Defendant Greenville County Law Enforcement Center and Health Services is not a "person" amenable

---

[1] In his amended complaint, the plaintiff withdrew his Eight Amendment Cruel and Unusual Punishment cause of action (*see* doc. 27).

5

to suit under Section 1983, and the plaintiff has alleged no facts to state a plausible Section 1983 claim against defendant Greenville County based on any alleged policy or custom that caused his injury. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403-404 (1997) (citing *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658 (1978)).

The plaintiff alleges "supervisor liability for failure to act" against defendant Bodiford. He alleges that defendant Bodfiord "was notified and was asked to provide this treatment or to correct him not receiving proper medical treatment and failed to do so after being properly notified subjecting him to liability for failure to act" (comp. at 3-4). The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992). Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The government is required to provide medical care for incarcerated individuals. *Id.* at 102. However, to establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. *See Estelle*, 429 U.S. at 106. Further, while the Constitution requires a prison to provide detainees with medical care, it does not demand that a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988). "[A detainee's] mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted); *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was

adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); *see also Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.").

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990) (citation omitted). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). *See also Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.1996) (noting that "the subjective component requires proof of more than mere negligence but less than malice").

Additionally, the Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier* 846 F.2d 854-55). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* at 854. ("[I]t would be an unprecedented extension of the theory of supervisory liability to charge these wardens, not only with ensuring that [an inmate] received prompt and unfettered medical care, but also with ensuring that their subordinates employed proper medical procedures – procedures learned during several years of medical school, internships, and residencies. No record

evidence suggests why the wardens should not have been entitled to rely upon their health care providers' expertise.").

Here, it is undisputed that defendant Bodiford is neither a medical professional nor a part of the medical clinic at GCDC. Defendant Bodfiord testified the while he does not specifically recall reviewing a claim by the plaintiff that he was not receiving treatment for a broken finger, it is his practice upon receiving such a claim to review the inmate's medical records to determine when and how often the inmate has been seen by medical services personnel. Here, the records show that an x-ray was taken on the day the plaintiff injured his finger, which showed the bones were in a good position. The plaintiff was given prescription pain medication, and numerous subsequent x-rays continued to show that the plaintiff's finger was healing properly. The plaintiff's allegation that his finger was not buddy taped does not raise an issue of material fact with regard to his allegations against defendant Bodiford. The plaintiff has not shown that the defendant was personally involved with a denial of treatment, deliberately interfered with the medical staff's treatment, or tacitly authorized or was indifferent to any alleged misconduct by the medical staff. Based upon the foregoing, summary judgment is appropriate on the claim.

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the defendants' motion for summary judgment (doc. 35) should be granted, and the plaintiff's motion for summary judgment (doc. 69) should be denied.

IT IS SO RECOMMENDED.

May 30, 2012  
Greenville, South Carolina

s/ Kevin F. McDonald  
United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.