IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Floyd Granger, #339558 ) <br> a.k.a. Floyd Randolph Granger, III ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Director Scotty Bodiford; Greenville ) <br> County Law Enforcement Center and ) <br> Health Services; Unknown Medical ) <br> Personnel; and Greenville County, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No.: 6:11-cv-01162-RBH <br><br> **ORDER** |

This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Kevin F. McDonald.[1]  Plaintiff and Defendants each filed motions for summary judgment.  In the R&R, the Magistrate Judge recommends that the Court grant Defendants' motion and deny Plaintiff's motion.  Also before the Court is Plaintiff's motion to amend the complaint to additional parties, as well as his motion to issue a subpoena ordering the South Carolina Department of Corrections to photograph his hand.  Both motions were filed after the issuance of the R&R.

**Factual Background and Procedural History**

Plaintiff, a state prisoner proceeding *pro se*, filed this action on May 11, 2011.  He alleges constitutional claims of deliberate indifference under 42 U.S.C. § 1983, as well as state tort claims, arising from the alleged failure of Defendants, officials with the Greenville County Detention

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to the Magistrate Judge for pretrial handling.

1

Center, to treat a broken finger during his detention. The Magistrate Judge, in his R&R, provides an adequate summary of the facts; however, the following facts are not in dispute.

Plaintiff punched a window. A broken pinky finger resulted. Jail medical personnel conducted an x-ray and forwarded the films to a radiologist, who confirmed Plaintiff's pinky finger was in fact broken. The doctor observed, "The bony structure is intact without evidence of dislocation. Fracture seen at the neck of the right 5th metacarpal bone. Bones are in good position. Articular surfaces are intact. No significant soft tissue abnormality is seen." ECF No. 35-3, at 2. His conclusion was simply to "recheck in 2 week interval." *Id.* A physician's assistant employed by the jail ordered that his pinky finger be "buddy taped" to his ring finger for two weeks, as well as a follow-up x-ray in two weeks. *Id.* at 3

Subsequently, over the course of his detention, Plaintiff received follow-up x-rays every two weeks, which showed consistent improvement, according to the medical records. Plaintiff, however, began to complain about pain and the failure of the medical staff to buddy tape his finger as ordered. Plaintiff's complaints turned into a request to staff to Defendant Scotty Bodiford, the jail's administrator, as well as calls to a member of the Greenville County Council, who, along with Plaintiff's father, intervened on Plaintiff's behalf. This apparently continued until Plaintiff was transferred to the custody of the South Carolina Department of Corrections. Plaintiff complains Defendants' failure to treat his broken finger precluded him from employment in prison industries. He seeks compensatory and punitive damages, as well as attorney's fees.

Defendants jointly filed a motion for summary judgment on September 9, 2011, arguing Plaintiff's claims were meritless. Plaintiff responded to their motion on October 12, 2011. Plaintiff also filed a motion for summary judgment on February 15, 2012. The Magistrate Judge issued his R&R on May 30, 2012, recommending that judgment be granted in favor of Defendants. R&R, ECF

No. 76. Plaintiff filed timely objections on June 20, 2012. Pl.'s Objs., ECF No. 79. Subsequent to the issuance of the R&R, Plaintiff filed a motion to amend his complaint (on June 18, 2012) and a motion to issue a subpoena (on June 20, 2012). ECF Nos. 78, 81.

## **Standard of Review**

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The right to *de novo* review may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id.* Moreover, in the absence of objections to the R&R, the Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). However, in the absence of objections, the Court must " 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## **Discussion**

### *I. Motion to Amend*

On June 18, 2012, after both motions for summary judgment were filed, Plaintiff filed a motion to amend his complaint "to [a]dd additional parties based on [n]ew evidence." He argues he

3

did not have access to information about the parties until discovery and could not have reasonably known about them beforehand. Mot. to Amend 1, ECF No. 78.

Plaintiff's complaint included as defendants "Unknown Medical Personnel." However, summonses were not issued for the unknown defendants. The Magistrate Judge, in a June 9, 2011 order, required Plaintiff to provide the Court "with additional sufficient particularized information to identify" the unknown defendants in order to avoid dismissal of his complaint against the defendants. ECF No. 16, at 3. Plaintiff was given 120 days from the filing of his complaint to identify the defendants in order to avoid dismissal; however, he failed to do so, and the "Unknown Medical Personnel" were never properly served.[2] In his motion to amend, Plaintiff suggests he can now identify these parties, although he fails to actually mention the them by name.[3]

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits the amendment of a complaint "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." However, denial of a motion for leave may be appropriate in certain circumstances, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court denies Plaintiff's motion to amend his complaint. Plaintiff filed his motion for summary judgment on February 15, 2012, and included records from his medical file. Despite

---

[2] The Court finds that dismissal of the "Unknown Medical Personal" *without prejudice* was proper under Rule 4(m) of the Federal Rules of Civil Procedure.
[3] In his objections to the R&R, Plaintiff notes that "[i]t was not until Plaintiff received his medical file that he was sure who the unknown medical personnel [were] and by then the initial 120 day period was up." Pl.'s Objs. 6.

4

having possession of his medical file,[4] which allowed him to ascertain the identities of the unknown defendants, Plaintiff did not move to amend his complaint until June 18, 2012—after the Magistrate Judge had issued his R&R recommending that summary judgment be granted in favor of Defendants. Given the pending motions, for Plaintiff to wait months before filing a motion to amend is unreasonable. The timing of Plaintiff's motion thus appears to be an effort to salvage his action after receiving an unfavorable recommendation from the Magistrate Judge. Therefore, Plaintiff's motion to amend his complaint is denied.

*II.     Motions for Summary Judgment*

The Magistrate Judge recommends granting Defendants' motion for summary judgment and denying Plaintiff's motion for summary judgment.[5] Specifically, he notes the following:

> [P]laintiff's allegation that his finger was not buddy taped does not raise an issue of material fact with regard to his allegations against [D]efendant Bodiford. [P]laintiff has not shown that the defendant was personally involved with a denial of treatment, deliberately interfered with the medical staff's treatment, or tacitly authorized or was indifferent to any alleged misconduct by the medical staff.

R&R 8. Plaintiff's lengthy objections, however, largely rehash the arguments he made in both his motion for summary judgment and his response to Defendants' motion for summary judgment.

Specifically, the only error of the Magistrate Judge the Plaintiff points to is that the Magistrate Judge based his recommendation on false facts relied on by the Defendants—facts Plaintiff argues are material. Specifically, Plaintiff reiterates that his broken finger was never buddy taped and that the Motrin he was prescribed was for a back injury, not his finger. His

---

[4] Plaintiff also received the various records from his medical file that were included as exhibits to Defendants' motion for summary judgment.

[5] The Magistrate Judge recommends granting summary judgment in favor of Greenville County Law Enforcement Center and Health Services because they are not "persons" amenable to suit under § 1983 and in favor of Greenville County because he "alleged no facts to state a plausible [§] 1983 claim . . . based on any . . . policy or custom." R&R 5-6. Plaintiff made no objection to these recommendations, and the Court finds no clear error.

5

argument is that the Court should conclude from these facts that Defendants, specifically Bodiford, did nothing to treat his broken finger—hence, a genuine dispute of fact. The Court however must focus on genuine disputes of *material* facts. Fed. R. Civ. P. 56(a).

Plaintiff's alleged in his complaint that Bodiford "personally failed to correct the denial of medical treatment." Compl. 2. His constitutional allegations against Bodiford are therefore rooted in supervisory liability. In actions brought under 42 U.S.C. § 1983, in which deliberate indifference to serious medical needs is alleged, "liability on the part of the supervisory defendants requires a showing that: (1) [they] failed promptly to provide an inmate with medical care, (2) [they] deliberately interfered with the prison doctors' performance, or (3) [they] tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citations omitted). In *Miltier*, like this case, the "claim of supervisory liability appear[ed] to rest on the third theory." *Id.*

The undisputed evidence shows Plaintiff received x-rays of his broken finger, in two-week intervals, over the course of several months. The radiologist concluded the fracture was healing properly after each x-ray, and the physician's assistant ordered the nursing staff to buddy tape Plaintiff's finger on several occasions. The only genuine dispute of fact is whether the medical staff did indeed follow the orders of the physician's assistant and buddy tape Plaintiff's finger as ordered. Although treatment records suggest action was taken to buddy tape Plaintiff's finger, several witnesses, in affidavits submitted by Plaintiff, attest Plaintiff's finger was never buddy taped. The Court, however, finds this factual question immaterial to Plaintiff's claim against Bodiford.[6]

---

[6] The failure to treat a broken finger, under certain circumstances, may very well rise to a claim of deliberate indifference. However, this Court is skeptical that Plaintiff can show the treatment he received, which included continuous x-rays over the course of several months and attention from a

6

At the very least, Plaintiff must show adequate evidence that Bodiford was sufficiently indifferent to his alleged serious medical needs. Here, Plaintiff has not made that showing. No evidence in the record indicates Bodiford was deliberately indifferent to Plaintiff's medical needs. Rather, the only reasonable inference from the evidence is that Bodiford was initially unaware of Plaintiff's complaints, and once the complaints were brought to his attention, Bodiford adequately monitored Plaintiff's treatment. First, Bodiford admits that he was contacted by a member of Greenville County Council, at some point during Plaintiff's detention, regarding Plaintiff's complaints. ECF No. 69-4, at 9. Second, Plaintiff's father submitted an affidavit declaring that Bodiford spoke with him over the phone about Plaintiff's finger after Bodiford was contacted by the councilwoman. ECF No. 69-3, at 4. Third, Plaintiff provided a January 9, 2010 request to staff addressed to Bodiford where he complained about his treatment. The request to staff was signed by a staff member, presumably Bodiford, and indicated Plaintiff's request was forwarded to the jail's medical staff. ECF No. 69-2, at 20. Finally, in his affidavit, Bodiford attested that, although he could not specifically recall Plaintiff's case, his standard practice is to review the medical records and interview medical personnel. He notes he likely did so in Plaintiff's case, and Plaintiff does not dispute this fact in his response.[7] ECF No. 68-1, at 2-3.

Plaintiff does not dispute Bodiford's statement that he is unqualified to make medical diagnoses, medical recommendations, or medical decisions. Moreover, as the Magistrate Judge notes, Plaintiff does not show, even by implication, that Bodiford had any role in Plaintiff's treatment, especially a role suggesting interference or indifference. Indeed, the evidence shows Bodiford was not involved in the medical decisionmaking and deferred to the jail's physician's

---

radiologist who opined Plaintiff's finger was healing properly in a good position, violated his due process rights. Even so, Plaintiff must bring his claim against the proper defendant.

[7] Instead, Plaintiff, in an affidavit included with his response, focuses again on the *medical staff's* failure to buddy tape his finger. ECF No. 40-2, at 3.

7

assistant to make medical decisions. When issues with Plaintiff's treatment were brought to his attention, Bodiford followed-up with the medical staff, as well as Plaintiff's father. Bodiford was entitled to rely on the decisions of the medical staff and the medical records, which showed the medical staff's continued attention to Plaintiff's medical needs.[8] *See Miltier*, 896 F.2d at 854 ("No record evidence suggests why the wardens should not have been entitled to rely upon their health care providers' expertise. Moreover, everything in the record suggests that the wardens closely monitored [the plaintiff's] health and ensured that she received medical treatment.").

The Court, therefore, finds no error in the Magistrate Judge's conclusion and recommendation to grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment.[9] Plaintiff has "failed to meet the heavy burden of proof in supervisory liability cases." *Id.* at 855.

## **Conclusion**

The Court has thoroughly reviewed the entire record, including the motions, the R&R, objections to the R&R, and applicable law. For the reasons stated above and by the Magistrate Judge, the Court hereby overrules Plaintiff's objections and adopts the R&R of the Magistrate Judge.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to amend the complaint is **DENIED**; Plaintiff's motion for summary judgment is **DENIED**, and Defendants' motion for summary judgment is **GRANTED**. Plaintiff's constitutional claims are hereby **DISMISSED** *with*

---

[8] By the time Bodiford plausibly began monitoring Plaintiff's treatment, the medical records indicated a "healing fracture" in "good position." ECF No. 35-3, at 11-15. Interestingly, one distinction between this case and *Miltier*, where the wardens were found not liable, is that the medical records here showed no evidence of the *deterioration* of Plaintiff's condition. *Miltier*, 896 F.2d at 854.

[9] Having recommended dismissal of Plaintiff's claims, the Magistrate Judge recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's tort claims. R&R 8. Plaintiff does not object to this recommendation, and the Court finds no clear error.

*prejudice*, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state tort claims.  All pending motions are deemed moot.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

September 12, 2012
Florence, South Carolina